**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YANNICE Y. NUNEZ,<br>*Defendant*. | Criminal No. ELH-22-00342 |

**MEMORANDUM**

This Memorandum addresses a motion filed by defendant Yannice Nunez, who is self-represented, seeking early termination of her supervised release. ECF 102 (the "Motion"). The government opposes the Motion. ECF 105 (the "Opposition"). But, the U.S. Probation Officer does not oppose the Motion. ECF 109. Defendant has replied to the Opposition. ECF 107.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion, without prejudice.

## I. Factual and Procedural Summary

Nunez and her codefendant, Theodore Mouzon, were indicted in September 2022, on charges of wire fraud conspiracy and wire fraud, under 18 U.S.C. §§ 1343 and 1349, pertaining to the period of June 2020 through March 2021. ECF 1. On January 4, 2024, defendant entered a plea of guilty to Count One, charging wire fraud conspiracy, in violation of 18 U.S.C. § 1349. ECF 54. The plea was tendered pursuant to a Plea Agreement. ECF 55.

The Statement of Facts included in the Plea Agreement (*id.* at 10) reflects that beginning in June 2020, the defendant and Mouzon engaged in a scheme to defraud financial institutions as well as the United States Small Business Administration, in an effort to obtain fraudulent loans for their businesses, pursuant to the Paycheck Protection Program ("PPP"), which was part of the

Coronavirus Aid, Relief, and Economic Security Act ("Cares Act"), and under the Economic Injury Disaster Loan Program ("EIDL"). In total, Ms. Nunez and Mr. Mouzon obtained over $300,000 in fraudulent loans. Moreover, defendant and Mouzon attempted to recover an additional sum, in excess of $373,000, but fortunately those loans did not close. Ms. Nunez used the funds she unlawfully obtained to buy items such as a motorcycle, luxury goods, and for plastic surgery. *Id.*

Pursuant to the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines"), defendant's final offense level was 18. ECF 98 (Amended Presentence Report), ¶ 52. She had a criminal history category of III. *Id.* ¶ 62. This included convictions for a prior armed robbery (*id.* ¶ 56), theft (¶¶ 57, 58), and credit card fraud (¶ 59). Moreover, defendant was on probation when the underlying crime occurred. *Id.* ¶ 58.

Defendant's Guidelines called for a period of incarceration ranging from 33 to 41 months of imprisonment. *Id.* ¶ 97. The government sought a sentence of 37 months' imprisonment. ECF 86 at 1, 4, 8.

Nevertheless, on June 10, 2024, the Court sentenced Ms. Nunez to a term of sixteen months of imprisonment, to be followed by a period of supervised release of three years. ECF 92 (Judgment). Ms. Nunez was also ordered to pay restitution in the sum of $300,162, payable in monthly installments of $100, beginning sixty days after defendant entered onto supervised release.

According to the government, "it appears that Ms. Nunez was released from the Bureau of Prisons" on July 28, 2025. *See* ECF 105 at 2. Therefore, she has served approximately fifteen months of the thirty-six month period of supervised release imposed by the Court.

In the Motion (ECF 102), Ms. Nunez asserts that she has complied with all of her supervised release obligations, has consistently made her restitution payments, and is the primary caregiver for her six children, one of whom was born in April 2026. ECF 102, ¶¶ 6, 7.

United States Probation Officer Terrell Whitter advised the Court by Memorandum of August 25, 2026, that the defendant has completed a substance abuse and mental health assessment, but no treatment was recommended. ECF 109. Moreover, defendant has been compliant with her conditions of supervision, including payment of restitution on a monthly basis. Therefore, "the Probation Office has no objection to the Defendant's request for early termination of supervision." *Id.*

As noted, the government opposes the Motion. ECF 105. In its view, termination is "premature . . . ." *Id.* at 3. The government contends that the underlying conviction was "extremely serious." *Id.* at 5. Moreover, it describes Ms. Nunez as "the driving force in a fraudulent scheme where she enlisted the help of Mr. Mouzon to wrongfully take advantage of a relief program meant to aid victims of an unprecedented public health and economic crisis by stealing a total of $300,162 in PPP loans and EIDL funds . . . ." ECF 105 at 5-6. Further, the government characterizes Ms. Nunez as "the ringleader of a fraudulent scheme where she stole public funds—meant to help struggling businesses—for her own self-indulgent frivolities . . . ." *Id.* at 6.

Moreover, the government argues that merely because Ms. Nunez has complied with the conditions of supervised release, this "is not a sufficient reason" to grant early termination. *Id.* at 7. In the government's view, early termination "would send a signal—both specifically to Ms. Nunez and more generally to other offenders—that the supervised release portion of a court's sentence is easily subject to revision and not to be taken seriously." *Id.*

Ms. Nunez has replied. ECF 107. She points out that she has "satisfied the statutory one-year threshold" for consideration by the Court for early termination. Moreover, she underscores her compliance with the obligations of supervised release. And, while recognizing the seriousness of the original offense, she argues that her conduct during supervised release warrants early termination. In this regard, she notes that she "has not returned to criminal conduct, has maintained sobriety, has complied with testing, has satisfied every monthly restitution payment required of her, and has complied with the directions of the United States Probation Office." *Id.* at 4. Further, because defendant is the primary caregiver for her children, she argues that her family responsibilities support early termination.

## II. Discussion

Supervised release is "a post-incarceration program intended 'to assist individuals in their transition to community life.'" *United States v. McLeod*, 972 F.3d 637, 641 (4th Cir. 2020) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)). "'[T]he primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term . . . or to provide rehabilitation to a defendant who has spent a fairly short period in prison . . . but still needs supervision . . . .'" *United States v. Lewis*, 90 F.4th 288, 294 (4th Cir. 2024) (citation omitted). Supervised release "essentially amounts to a *conditional* and *partial* release" from incarceration. *Id.* (emphasis in *Lewis*).

Punishment is not "an appropriate reason" to impose supervised release. *Lewis*, 90 F.4th at 294. Rather, supervised release "fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59. In imposing supervised release, the court must consider, *inter alia*, the defendant's history and characteristics and the need to deter criminal conduct. *Lewis*, 90 F.4th at 295.

The Motion implicates 18 U.S.C. § 3583(e)(1). It provides the District Court with authority to grant early termination of supervised release if, in the court's discretion, the relief is appropriate and in the interest of justice. It states:

> The court may, after considering the factors set forth in section 3553(a)(1),(a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) —
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

In sum, under 18 U.S.C. § 3583(e)(1), a court, after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), may terminate a defendant's term of supervised release at any time after the expiration of one year of supervision, if the Court is "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).

In assessing whether a defendant has met that burden, a court must consider:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics, 18 U.S.C. § 3553(a)(1);
>
> (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
>
> (3) the kinds of sentence and sentencing range established for the defendant's crimes, § 3553(a)(4)(A);
>
> (4) pertinent policy statements issued by the United States Sentencing Commission, § 3553(a)(5);
>
> (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
>
> (6) the need to provide restitution to any victims of the offense, § 3553(a)(7).

Effective November 1, 2025, the Guidelines were amended as to the imposition, modification, termination, and revocation of supervised release. Of relevance here, the Amendment created a new section, U.S.S.G. § 5D1.4. Section 5D1.4(b) provides:

> (b) EARLY TERMINATION.—Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice. See 18 U.S.C. § 3583(e)(1).

The Commentary includes factors that a court may want to consider in determining whether early termination is appropriate:

> (B) **Early Termination.**—When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:
>
> (i) any history of court-reported violations over the term of supervision;
>
> (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
>
> (iii) the defendant's substantial compliance with all conditions of supervision;
>
> (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
>
> (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
>
> (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

Here, defendant committed a very serious offense. The Plea Agreement contains a stipulation of facts that sets forth the gravity of the crime. As the Plea Agreement reflects, defendant engaged in a protracted scheme by which she and her codefendant submitted fraudulent PPP loan applications to financial institutions and a fraudulent EIDL application and used the money meant to help "struggling businesses" for "self-indulgent frivolities." ECF 86 at 4. As the government puts it in its sentencing memorandum, ECF 86 at 6: "Simply put, these pandemic loan programs were intended to be a lifeline, not a payday. Defendant's actions were self-serving and inexcusable."

The Court considers it particularly noteworthy that, at the time of the underlying offense, defendant was on probation for a State theft offense. *See* ECF 98, ¶ 58. For that offense, she faced "back up" time of three years of imprisonment. Yet, that did not deter defendant from engaging in the fraud she perpetrated in this case.

To be sure, defendant appears to be doing quite well on supervised release. I applaud her progress. But, supervision undoubtedly has helped guide defendant to the right path and to remain there. *See United States v. Buchanan*, 638 F.3d 448, 451 (4th Cir. 2011) (noting that supervised release is intended "'to improve the odds of a successful transition from the prison to liberty.'") (citation omitted).

Moreover, defendant's compliance with the conditions of supervised release is consistent with the expectations for supervised release. *See*, *e.g.*, *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D. N.Y. 2015) (recognizing that "'full compliance with the terms of supervised release is what is expected of the defendant and does not warrant early termination'") (citation omitted); *Folks v. United States*, 733 F. Supp. 2d 649, 651-52 (M.D. N.C. 2010) (recognizing that although compliance with supervised release conditions is "commendable," it is "what is required . . . and

is not a basis for early termination of [defendant's] supervised release"); *United States v. Guillatt*, 2005 WL 589354, *1 (E.D. Pa. 2005) ("The conduct cited by defendant is commendable. However, it is nothing more than what is required under the terms of defendant's probation."). If mere compliance with the terms of the court's supervision were sufficient to merit early termination, "the exception would swallow the rule." *Id.*; *see also United States v. Lohman*, 2007 WL 1430282, *1 (E.D. Wis. 2007) (holding that if simple compliance were sufficient for early termination, "every defendant who avoided revocation would be eligible for early termination").

In addition, I am mindful that, for various reasons, I was quite lenient at sentencing in imposing a sixteen month prison sentence. The sentence was well below the bottom of the Guidelines (33 to 41 months) and substantially below the sentence sought by the government (37 months). At that time, the defendant had five children and was pregnant. She had also done well while on pretrial release. In addition, she had experienced hardship in her life. But, in imposing a sentence well below the bottom of the Guidelines, I relied on the fact that the sentence would be followed by three years of supervision. Then, as now, I considered the period of supervised release as integral to the total sentence. Defendant has only served about fifteen months of her three-year term of supervised release.

## III. Conclusion

The Court's primary focus concerns 18 U.S.C. § 3553(a)(1). Public safety weighs heavily here. Other factors are also important. They include the nature and circumstances of the underlying offense, the need to promote respect for the law, and the need to deter any future misconduct by defendant. All of these factors lead me to conclude that early termination of supervision is not appropriate at this time.

In my view, supervision is crucial to assist defendant in maintaining her status as a law-abiding, productive member of the community. Moreover, supervised release is not unduly burdensome, particularly when I consider the gravity of the crime.

Therefore, I shall deny the Motion, without prejudice to the right of the defendant to renew the Motion at a later time.

An Order follows.

Date: October 22, 2026

/s/
Ellen L. Hollander
United States District Judge